HATCH, Appellant, v. CITY OF MOUNT VERNON, Respondent.

(178 N. W. 931.)

(File No. 4640.   Opinion filed July 27, 1920.)

**Damages—Municipal Sewer Over Farm Land—Present and Future Damages, Contract for Arbitration of Re Construction, Maintenance, Operation, on Demand Within Specified Date—No Demand—Award to be Full Satisfaction—Tile to be Built if Stream Interferes With Farming, Whether This Included in Arbitration Clauses, Bad Complaint for Damages For.**

A city contracted with plaintiff for right to construct a sewer across his land, paying $1750. therefor; the contract further providing for payment of such damages if any, above $1750,. as he might sustain by reason of construction, maintenance and operation of sewer mains, present and future, including permanent, damages to be ascertained by arbitrators, if arbitration demanded within five years, the award to be accepted in full satisfaction and discharge of all claims, actions and demands. Then followed a provision that in case sewer mains shall create an open stream across the land such as to interfere with use of same for farming purposes, the city shall tile the water across the land. In a suit to recover damages resulting from discharge of sewerage through an open stream across the land, there being no allegation of a demand for arbitration of damages at any time, held, that, construing the whole contract together, it was the parties' intention to and they did provide, that every species of damage, temporary or permanent, past, present or future, was subject to the arbitration clauses; that no action of any kind for damages thereunder lay after the five years; that thereunder the necessity for and the right to require tiling was contingent on results of operation and maintenance of the sewer, which damages were concluded by the award provision unless demand for arbitration was made within the stipulated period; that the only effect of the provision for tiling, was to enlarge amount city would be required to expend in case an award of damages was made under arbitration; that after the five year period without demand for arbitration, all plaintiff's rights to further recovery beyond the $1750. ceased; and that complaint failed to state a cause of action.

Whiting and Polley, J. J., dissenting.

Action by F. M. Hatch against the City of Mount Vernon, a municipal corporation, to recover damages arising on contract, resulting from discharge of sewerage from defendant city through a stream over plaintiff's land.   From a judgment for

defendant, and from an order denying a new trial, plaintiff appeals.   Affirmed.

*H. G. Giddings, for Appellant.*

*Miller & Mitchell,* for Respondent.

GATES, J.   Appeal from a judgment for defendant and from an order denying a new trial.

On October 11, 1909, the plaintiff, party of the first part, and the defendant, party of the second part, entered into an agreement in writing authorizing defendant to construct and maintain sewer mains for a distance of 800 feet across the S. W. ¼, section 15, township 103 north, range 62 west 5th P. M., the defendant paying plaintiff $1,750 therefor.   The following are the paragraphs of the agreement material to the question before us, which, for convenience, we have numbered; the italics being ours:

"(4)   Said second party further agrees to pay said first party such actual and reasonable damages as he may sustain by reason of the construction, maintenance, and operation of said sewer mains and the present and all future damages to said lands, provided said damages shall be found to exceed the sum of $1,-750 as hereinafter more particularly set forth; the damages to said land, if any, *including the present and all future damages to said land* to be ascertained by disinterested arbiters. * * *

"(5)   Said first party shall have the right to demand an arbitration of the damages occasioned to said land by reason of the construction, operation, and maintenance of said sewer mains and the outlets thereof at any time after April 1, 1910, by serving a written notice of his intention to arbitrate upon the mayor of said second party; *but such arbitration must be demanded by said first party, if at all, within five years after the execution and delivery of this contract,* and the three persons so chosen shall, whenever such arbitration is called for by said first party, determine and award the damages to said land, if any, occasioned by the construction, operation, and maintenance of said sewer mains and the outlets thereof; both parties to this agreement to be bound and concluded by the findings and award of said arbiters, which findings and award shall be made and returned in writing. * * *

"(7) It is further agreed by and between the parties hereto that said arbiters shall consider and determine the actual. and reasonable damages sustained by said land up to the time of said arbitration and *permanently.* \* \* \*

"(8) It is further agreed by and between the parties hereto that, in the event of said arbiters finding and awarding damages to said first party by reason of the construction, maintenance, and operation of said sewer mains and the outlets thereof, in excess of $1,750 then the sum so found in excess of said $1,750 shall be paid to said first party by said second party within one year after the arbiters shall have made and returned their findings and award; but if the damages so found and awarded shall not amount to the sum of $1,750, then the $1,750 hereinbefore mentioned as paid to the said first party by said second party for the right and easement to enter upon said land and lay, construct, operate, and maintain said sewer mains and the outlets thereof over, in, and upon the same, shall be full compensation of said first party both for the easement so granted and the damages to said land by reason of the permanent construction and maintenance thereon and thereover the said sewer mains and the outlets thereof; that is to say, *said first party under and by virtue of the provisions of this contract shall not receive or be paid a sum under the provisions of this contract beyond the sum of* $1,750, *unless the award of the arbiters shall exceed that sum,* and then only as much more than $1,750 as the difference between the amount of such award and that sum; and upon its part the second party hereto agrees to pay said first party such actual and reasonable damages as his land may sustain by reason of the construction, operation, and maintenance of said sewer main and the outlets thereof, to be determined by arbitration as aforesaid, *and said first party upon his part agrees to accept said award in full satisfaction and discharge of all claims, actions, and demands whatsoever which he might have against said second party by reason of the construction, op-. eration and maintenance of said sewer mains, and the outlets thereof, in, upon, and across said land,* \* \* \*

(10) It is further agreed by and between said parties that in case said sewer mains shall create an open stream across said land to such an extent as to interfere with the use of the same by said first party for ordinary farming purposes, then said second party

shall properly tile said water across said land; but said first party shall not have the right to require said second party to tile said water across said land until after November 1, 1910."

This action was begun September 12, 1919, nearly ten years after the making of the agreement. Among other allegations the complaint averred:

"That commencing about the 1st day of March, 1914, and continuously thereafter, the discharge from said sewer mains has created an open stream across plaintiff's said land to such an extent as to interfere with the use of the same by plaintiff for ordinary farming purposes, causing a damage to plaintiff annually of at least the sum of one hundred ($100) dollars, or in the aggregate sum of five hundred ($500) dollars, the claim for which is still plaintiff's property and is unpaid.

"That on or about the 1st of March, 1914, and since said time, plaintiff has caused demand to be made of the said city of Mt. Vernon for the construction of a tile and properly tiling of said water across plaintiff's said land, but the defendant has failed, neglected, and refused to do so."

There was no allegation of a demand for an arbitration of damages within the five-year period or at all. After the first witness was sworn, the defendant objected to the introduction of any evidence, for that the complaint did not state a cause for action. The objection was sustained, and a verdict directed for defendant.

It will be seen that the fundamental question is whether the damages sued for, arising under paragraph 10 of the agreement, come under the arbitration clauses of the contract. If they do, then the complaint does not state a cause of action, because it is not alleged that an arbitration was demanded within the five-year period. It is the contention of the plaintiff that paragraph 10, standing out by itself, did not come under the arbitration clauses, and that any damages arising under that paragraph were not barred by the five-year clause.

Construing the whole contract together, we are clearly of the opinion that it was the intention of the parties to provide, and that they did provide, but every possible species of damage, temporary or permanent, past, present, or future, was subject to the arbitration clauses of the agreement, and that after October 11,

1914, no action of any kind for damages under the agreement could be brought. It was only "in case said sewer mains shall create an open stream across said land to such an extent as to interfere with the use of the same by said first party for ordinary farming purposes" that the defendant city was required to tile the land. It is clearly apparent, therefore, that the necessity for, or the right to require, the tiling was contingent upon results attending the operation and maintenance of the sewer. Inasmuch as all damages attendant upon the operation and maintenance of the sewer were concluded by the award, unless demand for arbitration was made within the five-year period, it seems entirely clear to us that the plaintiff is precluded from maintaining this action.

In our opinion the only effect of paragraph 10 of the agreement was to enlarge the amount which the defendant would be required to expend in case an award of damages was made under arbitration; that is to say: If upon arbitration it was found that the sewer main created an open stream across plaintiff's land to such an extent as to interfere with the use of the land, and even though the total damages caused by the construction and maintenance of the sewer did not exceed the sum of $1,750, yet the defendant would be obligated to "properly tile said water across said land"; but when the five-year period elapsed, and no claim for arbitration was made, then all rights of plaintiff to a further recovery from defendant beyond the said sum of $1,750 ceased. To hold otherwise would nullify the italicized last portion of paragraph 8 and other parts of the agreement.

It being entirely clear to us that the present action was one to recover damages occasioned by the construction, maintenance, and operation of the sewer, the judgment and order appealed from are affirmed.

WHITING, J. (dissenting.) It seems to me that the majority opinion places a wrong construction on the contract. Under such construction we have these parties contracting to arbitrate, not only the damages that result from a carrying out of the contract, but—a thing almost inconceivable—we have them contracting to arbitrate damages that might result from a breach of the contract. Is it possible that parties would contract to arbitrate damages when the selfsame contract provides that, in case there

arises a particular condition from which damages might result, the condition itself should be so remedied that there be no damage? As I read this contract, plaintiff contracted to allow the city to extend its sewer pipes 800 feet onto his quarter section of land and there discharge the sewerage. It is fair to assume that, at this point, the lay of the land was such as to afford an opportunity for discharging the sewerage onto the surface of the land. It is evident that both parties labored under the belief that the sewerage would probably then run off without any damage to the land—that there would not be sufficient of it to create a running stream across the land. Laboring under the above belief, they contracted: First, as to the consideration that should be paid plaintiff for those damages that must of necessity result, and for the easement; and, second, as to what should be done to meet a contingency that might arise but which was not really expected—an amount of sewerage that flowing on the surface of the land, would work a permanent injury. Plaintiff, fearing that the anticipated damages might exceed $1,750, procured the insertion of the provision under which, if he desired, he could demand arbitration and procure a greater amount, if entitled thereto; but clearly this was to cover no other damages, except those resulting from the fulfillment of the contract.

This arbitration could be demanded months before plaintiff could make any demand under paragraph 10, and might be had months before either party could know that conditions would ever arise calling for tiling under paragraph 10. On the other hand, suppose that, in July, 1910, plaintiff discovered that there was such a volume of sewerage as to entitle him to have the city tile his land to take care of same. He could not demand damages on account thereof; neither, if an arbitration was then pending, could the arbitrators, when determining the elements of damages to be by them considered, have included damages from this excess of sewerage, for the very obvious reason that the remedy was not to be a recovery of damages, but a removal of the cause thereof; and the city would have until November, 1910, before it was in duty bound to remove such cause.

At the time this contract was entered into, neither party could tell whether the further requirements of the city would increase the volume of the sewerage to such an extent as to re-

quire that the land be tiled. Paragraph 10 was inserted to meet this contingency, and provided a most reasonable and just way of meeting same. The increased use of sewerage might, as it apparently did in this case, bring about a condition demanding tiling within five years. Such condition might have arisen as soon as the system was installed, or it might not arise for a long period of years; but the parties intended that when, if ever, it did arise, this condition should be remedied, not paid for. Such being the clear intent of the parties, it certainly was never contemplated by them that the provision in relation to arbitration should apply to the situation provided against in paragraph 10. This is made absolutely clear by the fact that, under the contract, the city could not have refused to put in the tiling, basing such refusal on the ground that the $1,750 paid by it fully compensated plaintiff for all damages—both those arising from the performance of the contract and those arising from an excessive flow of sewerage.

POLLEY, J.   I concur in the views expressed in the dissenting opinion of Judge WHITING.